**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-18-0000216
17-SEP-2025
10:07 AM
Dkt. 36 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, DEPARTMENT OF PUBLIC SAFETY,
Respondent/Employer-Appellant-Appellee,

vs.

RUTH FORBES (MAB Case No. 354),
Petitioner/Employee-Appellee-Appellant,

and

MERIT APPEALS BOARD,
SEAN SANADA, VALERIE PACHECO, and NORA NOMURA,
Respondents/Agency-Appellees-Appellees.

SCWC-18-0000216

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000216; CASE NO. 1CC171001242)

SEPTEMBER 17, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, AND DEVENS, JJ.,
AND GINOZA, J., DISSENTING

OPINION OF THE COURT BY DEVENS, J.

## I.  INTRODUCTION

This case involves the discharge of an excluded collective bargaining civil service employee under Hawai'i Revised Statutes (HRS) Chapter 76 and raises an issue relating to the scope of the Merit Appeals Board's (MAB) authority to modify an employer's disciplinary action.  We conclude that under the facts and circumstances of this case, the MAB acted within its statutory scope of authority.

Petitioner/Employee-Appellee-Appellant Ruth Forbes (Forbes) was employed by Respondent/Employer-Appellant-Appellee State of Hawai'i, Department of Public Safety (DPS) as the warden of Kulani Correctional Facility (Kulani) until her discharge in 2015. Forbes appealed her discharge to the MAB.  After partially sustaining the charges against Forbes and in consideration of Forbes's past employment record, which included more than twenty years of service without any prior disciplinary action, the MAB modified the employer's discharge to a sixty-day suspension based on the principle of progressive discipline, thus reinstating Forbes to her former position.[1]

DPS appealed the MAB's decision to the Circuit Court of the

---

[1] Board members present for the hearing were Paul K.W. Au, Valerie Pacheco, and Laurie Santiago.  Current members are Sean Sanada, Valerie B. Pacheco, and Nora Nomura.  See Hawai'i Rules of Appellate Procedure Rule 43(c) (eff. 2025).

First Circuit (circuit court). The circuit court reversed the MAB on the basis that the MAB exceeded its statutory authority in modifying the DPS Director's decision to discharge Forbes.[2] The Intermediate Court of Appeals (ICA) affirmed.

We accepted Forbes's application for writ of certiorari. Forbes contends that the MAB's decision to modify the employer's discharge action to a sixty-day suspension was within the MAB's statutory authority to review and modify disciplinary actions taken against civil servants under HRS Chapter 76. We agree and hold that the MAB did not exceed its statutory authority or abuse its discretion when it modified the employer's disciplinary action from a discharge to a sixty-day suspension in alignment with the employer's own progressive discipline policy.

## II.  BACKGROUND

### A.  Factual Background

In December 2013, Forbes was selected to serve as the warden of the Kulani prison on Hawai'i Island and was tasked with the responsibility of reopening the prison, which had been closed since 2009. The record reflects that Forbes was first employed with DPS in 1995 as a correctional officer. She was subsequently promoted to supervisor. Over her two decades of service, she had

---

[2]    The Honorable Keith K. Hiraoka presided.

no disciplinary infractions.

In December 2014, a Kulani employee submitted a letter of resignation to DPS citing a "threatening and hostile working environment that [he had] been wrongly accused of and subjected to by Warden Ruth Collar Forbes." Subsequently, the former employee submitted a formal complaint against Forbes for incidents that allegedly occurred between January 2014 and January 2015.

Forbes received a letter from the DPS Director informing her that she would be placed on leave without pay pending the outcome of an investigation relating to "allegations of creating a hostile work environment[.]"

## B. Agency Proceedings

### 1. DPS Director's Decision

A Report of Investigation was completed recommending in part, that the findings from the investigation be referred to the Deputy Director for Corrections for pre-disciplinary proceedings. The DPS Director sent Forbes a letter informing her of the charges that were substantiated and those that were not. A pre-disciplinary due process hearing was held for Forbes before a hearings officer. The hearings officer sustained thirty-seven charges, partially sustained one charge, and dismissed five other charges. The hearings officer recommended to the DPS Director

that Forbes be discharged from her employment.

Forbes was subsequently notified by the DPS Director of his decision to discharge her effective December 4, 2015.

### 2.    Charges

Among the charges sustained by the hearings officer, nineteen were based on the employer's policy no. ADM.03.13.3.2 Discrimination and Harassment in Employment, including charge no. 2, which alleged that Forbes had violated ADM.03.13.3.2 for "sexually harassing [a former employee] through unwanted physical contact including sexually suggestive or offensive touching."

Policy no. ADM.03.13.3.2 Discrimination and Harassment in Employment is a progressive discipline policy that prohibits discrimination and harassment in the workplace.  The policy provides that

> [d]iscrimination and harassment of employees and volunteers of the [Public Safety Department] are prohibited and shall not be tolerated or condoned by the Department.  Employees or volunteers of the Department engaged in such activity of discrimination or harassment may be subject to corrective action up to and including immediate discharge.

No. ADM.03.13.3.2 (emphasis added).

Only one charge, charge no. 25, found Forbes to be in violation of the employer's zero-tolerance policy no. ADM.08.10 Workplace Non-Violence "by imparting and/or intimating an intent to cause physical or mental harm to [a former employee]."

### 3.    Pre-Discharge Hearing

A pre-discharge hearing was held for Forbes to contest the

DPS Director's discharge decision.  On December 16, 2015, the DPS Director sent a letter informing Forbes that the discharge action was sustained.

### 4.    MAB Decision

Forbes appealed the DPS Director's decision to the MAB.  The MAB held a two-day contested case hearing wherein the parties had an opportunity to call and cross-examine live witnesses and present other evidence in support of their positions.  Forbes argued that the investigation was based on unsubstantiated allegations by four individuals "who resented the work, the pace, and the accountability that they were held to."  Forbes further contended that one of the employees who made complaints against her had been investigated for a suspected relationship with an inmate at Kulani and later resigned from DPS.  The evidence presented by Forbes included her longtime service with DPS without any prior discipline and an award she received from the governor for her "outstanding contributions to the State government."

On June 30, 2017, the MAB issued its Findings of Fact, Conclusions of Law, Decision, and Order (Decision and Order).  The MAB found that there was "credible evidence" to sustain charges nos. 2-15, 17, 19, 20, 33, 37, 38, and 41.  However, the MAB further found that there was no credible evidence to sustain charges nos. 16, 18, 21-30, 34-36, 40, and 42.  Relevant here,

the MAB sustained charge no. 2 finding that there was "credible evidence that Appellant [Forbes] sexually harassed [a former employee] through unwanted physical contact in charge 2." However, the MAB also concluded that there was "no credible evidence that Appellant [Forbes] imparted and/or intimat[ed] an intent to cause physical or mental harm to [a former employee] in charge 25." As stated, that was the only charge lodged against Forbes pursuant to the employer's zero-tolerance policy no. ADM.08.10 Workplace Non-Violence.

The MAB continued,

> 31. While Respondent has argued that the misconduct of Appellant is more than adequate to support the decision to terminate Appellant's employment, the Board does not believe that [Forbes's] discharge from employment was "just" or made for such cause that would "promote the efficiency of government service" under HRS Section 76-46. While the Board finds that there are substantiated reasons to discipline Appellant, the Board also finds that many of the charges were not substantiated and that there are several reasons why the Board does not believe that discharge was the appropriate discipline.
>
> 32. Here, Appellant was tasked with the responsibility for reopening Kulani, which included installation of a new communications system and hiring of employees to fill the various vacant positions at Kulani which would have been complicated for a Warden with experience. There was no evidence that Appellant was previously disciplined while a Warden or in any other position in DPS. Appellant is a longtime employee with the DPS having served for more than twenty years for DPS. Appellant's actions herein do not justify the imposition of the severe sanction of discharge based on the principle of progressive discipline. Thus, the Board does not find that the discharge of Appellant was just under the circumstances and will not promote the efficiency of government service.
>
> 33. In view of the above, the Board finds that the action taken by the Respondent DPS to discharge Appellant was not just or to promote the efficiency of government, thus the

Appellant's appeal is GRANTED.

Pursuant to the MAB's Decision and Order, Forbes was reinstated to her former position as warden with the discharge action modified to a sixty-day suspension.

## C.   Circuit Court Proceedings

DPS appealed the MAB's Decision and Order to the circuit court pursuant to HRS § 91-14(g).  Specifically, DPS appealed conclusions of law (COL) 31, 32, and 33, asserting that the MAB's determinations were in violation of HRS § 76-46; exceeded the MAB's statutory jurisdiction; affected by error of law; clearly erroneous in view of the substantial evidence in the record; and "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."  DPS did not appeal the MAB's finding that there was insufficient evidence to sustain charge no. 25.  Forbes did not file a cross-appeal.

DPS argued that the MAB exceeded its statutory authority in applying HRS § 76-46 to overturn Forbes's discharge and abused its discretion in reinstating her "in light of the severe and pervasive behavior" sustained in the MAB's findings.  DPS further motioned for the circuit court to stay the MAB's Decision and Order reinstating Forbes, which the court granted.

Following a hearing, the circuit court reversed the MAB's Decision and Order and concluded that the MAB "acted in excess of

its statutory authority because its decision to modify the
discharge decision 'based on the principle of progressive
discipline' improperly impinged upon the policies promulgated
under the state director of human resources development, contrary
to the legislative purpose of HRS § 76-47(c)."

Citing to policy no. ADM.08.10 relating to workplace non-
violence, the circuit court determined that because charge no. 2
was sustained by the MAB, "that specific incident . . . required
[the MAB] to defer to the [human resources development]
director's adoption of the zero-tolerance policy rather than a
policy of progressive discipline."  The circuit court concluded
that the MAB "exceeded its statutory authority and impinged upon
the authority of the director by applying the principle of
progressive discipline in lieu of the applicable zero-tolerance
immediate discharge policy."

However, the circuit court also observed that "[p]rogressive
discipline for most of the charges the [MAB] found were supported
by credible evidence . . . [and] could be imposed consistent with
DPS policy no. ADM.03.13."  The circuit court noted that "[w]ere
those the only charges at issue, the court would be required to
defer to the [MAB's] expertise and experience and not substitute
its own judgment for that of the agency."

D.   ICA Proceedings

Forbes appealed the circuit court's orders granting DPS's

motion for stay of the MAB's Decision and Order, denying Forbes's motion to change venue, and reversing the MAB's Decision and Order, and the circuit court's judgment.  The ICA affirmed.

In her appeal to the ICA, Forbes raised several points of error.  Relevant here, Forbes asserted that the circuit court erred in its determination that the MAB exceeded its statutory jurisdiction in failing to apply the employer's zero-tolerance policy.  Forbes noted that "[t]he zero-tolerance workplace violence policy involved a separate charge" and "[t]he MAB dismissed the workplace violence charge for lack of credible evidence[.]"  Forbes argued that the circuit court erroneously "linked the dismissed workplace violence charge to the charge of sexual harassment, under a completely separate departmental policy as the linchpin of its decision overruling the MAB."

Relevant to the issue before this court, the ICA concluded that the MAB exceeded its statutory authority under HRS § 76-47(c) and HAR § 14-25.1-4(y) based on the DPS's zero-tolerance workplace violence policy.  Dep't of Pub. Safety v. Forbes, No. CAAP-18-0000216, 2024 WL 1134050, at *3 (Haw. App. March 15, 2024) (SDO).

Forbes contends that the MAB's Decision and Order

should be affirmed.  We agree.

### III.  STANDARDS OF REVIEW

#### A.    Agency Appeals

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal.  The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) . . . to the agency's decision.

Bell v. Hawai'i Pub. Hous. Auth., 156 Hawai'i 1, 10, 568 P.3d 61, 70 (2025) (quoting Dep't of Env't Servs., City & Cnty. of Honolulu v. Land Use Comm'n, 127 Hawai'i 5, 12, 275 P.3d 809, 816 (2012)).

HRS § 91-14(g) (2012 & Supp. 2016) provides the following standards of review:

> (g)  Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1)  In violation of constitutional or statutory provisions;
> (2)  In excess of the statutory authority or jurisdiction of the agency;
> (3)  Made upon unlawful procedure;
> (4)  Affected by other error of law;
> (5)  Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)  Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Pursuant to HRS § 91-14(g), an agency's conclusions of law are reviewed de novo, . . . while an agency's factual findings are reviewed for clear error."  Bell, 156 Hawai'i at 11, 568 P.3d

11

at 71 (citing Camara v. Agsalud, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984)).

## B.   Statutory Interpretation

Our standard of review for statutory interpretation is well-established.  "The interpretation of a statute is a question of law which [the appellate] court reviews de novo."  Sierra Club v. Dep't of Transp., 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (citations and emphasis omitted).  "Where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning."  Id.

## IV.   DISCUSSION

The MAB has exclusive jurisdiction to decide appeals relating to disciplinary actions taken against civil service employees who are excluded from collective bargaining coverage. HRS § 76-14 (2012).  HRS § 76-47(a) provides that "[e]ach jurisdiction shall establish a merit appeals board that shall have exclusive authority to hear and decide appeals relating to matters set forth in section 76-14 concerning the civil service of the jurisdiction."  HRS § 76-47(a) (2012).

The thrust of Forbes's contention is that the ICA and the circuit court erred in concluding that the MAB exceeded its authority when it modified the DPS Director's disciplinary action, thus rendering the MAB's exclusive jurisdiction to hear and decide such appeals pursuant to HRS §§ 76-14 and 76-47(a)

12

"meaningless."

The MAB sits as an appellate body.  HRS § 76-47(e) unambiguously vests the MAB with the following statutory authority:

> If the board finds that the reasons for the action are not substantiated in any material respect, the board shall order that the employee be reinstated in the employee's position, without loss of pay, but if the board finds that the reasons are substantiated or are only partially substantiated, the board shall sustain the action of the appointing authority, provided that the board may modify the action of the appointing authority if it finds the circumstances of the case so require and may thereupon order such disposition of the case as it may deem just.

HRS § 76-47(e) (emphasis added).

The plain language of the statute unequivocally grants the MAB the authority to "modify" an employer's disciplinary action if the MAB finds modification is required under the circumstances and is considered just.

Forbes's first point of error is that the ICA's affirmance of the circuit court's order reversing the MAB "interfere[s] with the MAB's exclusive and original jurisdiction."  The legislature vested the MAB with the "exclusive authority to hear and decide" appeals like the one at issue in this case.  HRS § 76-47(a).  Importantly, however, HRS § 76-47(e) also provides that "findings and decisions of the [MAB] shall be final on all appeals, unless an appeal is taken as provided in chapter 91."  HRS § 76-47(e).  Here, DPS appealed the MAB's Decision and Order to the circuit court pursuant to HRS § 91-14.  Therefore, the MAB's Decision and

13

Order was appropriately subject to further review by the circuit court. The circuit court's review, in turn, was pursuant to HRS § 91-14(g).

Because the circuit court reviewed the MAB's Decision and Order pursuant to HRS § 91-14(g), we disagree with Forbes's argument that the circuit court interfered with the MAB's jurisdiction. But we agree with Forbes that the MAB acted within the scope of its statutory authority. We hold the MAB did not exceed its statutory authority or abuse its discretion in modifying the DPS Director's disciplinary action from a discharge to a sixty-day suspension.

In this case, both the ICA and the circuit court erroneously concluded that charge no. 2 was charged pursuant to the employer's zero-tolerance workplace violence policy no. ADM.08.10, and therefore, constituted a violation of the employer's policy. However, the only charge alleged pursuant to policy no. ADM.08.10 was charge no. 25. The MAB found that there was "no credible evidence" to sustain charge no. 25 and, as DPS did not challenge this finding on appeal, it is binding on this court.[3] See Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002) ("Findings of fact . . . not

---

[3] In oral argument, DPS conceded that the DPS Director's letter discharging Forbes did not "link" charge no. 2 to policy no. ADM.08.10, which is the zero-tolerance policy at issue. Oral argument 36:20-38:00, http://oaoa.hawaii.gov/jud/oa/24/SCOA-103124-SCWC-18-0000216.mp3 [https://perma.cc/XBY7-5Y3M].

14

challenged on appeal are binding on the appellate court.").

Based on this erroneous premise, the ICA determined that the MAB exceeded its statutory authority because the Board was required to defer to DPS's zero-tolerance workplace violence policy no. ADM.08.10 under HRS § 76-47(c) and HAR § 14-25.1-4(y). Dep't of Pub. Safety v. Forbes, 2024 WL 1134050, at *4. Indeed, HRS § 76-47(c) guardrails the MAB's role as an appellate decision-making body by placing the limitation that "matters of policy" are to be determined by the state director of human resources development (DHRD). See also HAR 14-25.1-4(y) (eff. 2003). In this case, however, both the ICA and the circuit court understandably overlooked that charge no. 2 was alleged pursuant to policy no. ADM.03.13.3.2, which is a progressive discipline policy and provides that employees in violation of the policy "may be subject to corrective action up to and including immediate discharge."

Because the sustained charges were not alleged pursuant to policy no. ADM.08.10, the MAB properly considered progressive discipline policy no. ADM.03.13.3.2, and its decision to modify the disciplinary action did not contravene that policy or impinge on the DHRD's authority to formulate and implement policy. Thus, the MAB did not ignore the employer's disciplinary policies, and the modification of the DPS Director's decision to discharge Forbes was well-within the MAB's granted statutory authority

15

under HRS § 76-47.[4]

Reviewing the MAB's findings, we conclude that the MAB appropriately considered the DPS Director's discharge decision in alignment with the disciplinary policies applicable to the sustained charges.

After holding a two-day contested case hearing, during which the three-panel board heard oral testimony from eight witnesses, including Forbes, the MAB issued a decision modifying the DPS Director's disciplinary action to a sixty-day suspension. The MAB based its decision on the principle of progressive discipline, which did not contravene policy no. ADM.03.13.3.2 and was well-within the bounds of its authority to modify a disciplinary action as it deemed just. See HRS § 76-47(e).

In weighing the evidence presented, the MAB considered Forbes's service record and mitigating factors such as evidence that she was "tasked with the responsibility for reopening Kulani, . . . which would have been complicated for a Warden with experience." The MAB continued that Forbes had "served for more than twenty years for DPS," and "[t]here was no evidence that [Forbes] was previously disciplined while a Warden or in any

---

[4] Although it is unnecessary to our holding, we agree with the ICA that the circuit court did not rule that DPS's policies superseded the "just cause" standard for discharge. See Konno v. Cnty. of Hawai'i, 85 Hawai'i 61, 68, 937 P.2d 397, 404 (1997) (noting that "civil servants can be terminated only for just cause"); see also HRS § 76-1 (2012) ("It is the purpose of this chapter to require each jurisdiction to establish and maintain a separately administered civil service system based on the merit principle.").

other position in DPS[.]"  Weighing the evidence, credibility of the witnesses, and considering the mitigating factors above, the MAB modified the employer's discharge to a sixty-day suspension.[5]

We "decline to consider the weight of the evidence . . . or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field."  See Igawa v. Koa House Rest., 97 Hawaiʻi 402, 410, 38 P.3d 570, 578 (2001) (citations and quotations omitted).  As the circuit court noted in its order reversing the MAB, if the only charges sustained were pursuant to the progressive discipline policy no. ADM.03.13.3.2, "the court would be required to defer to the Merit Appeals Board's expertise and experience and not substitute its own judgment for that of the agency."

For these reasons, we defer to the MAB's expertise and discretion as both the trier of fact and an expert agency dealing within a specialized field and conclude that the MAB did not abuse its discretion in modifying the DPS Director's decision to

---

[5]     While we recognize the serious nature of the charges against Forbes, as discussed in the dissent, we also note that the MAB's decision to modify the discipline to a sixty-day suspension is neither trivial nor inconsequential. A sixty-day suspension without pay is the equivalent of approximately three months of wages/salary or about 25% of an employee's annual earned income, which can have a serious and devastating short-term and long-term financial impact on an employee.

terminate Forbes.

## V. CONCLUSION

We reverse the ICA's April 12, 2024 Judgment on Appeal to the extent the ICA affirmed the circuit court's March 8, 2018 Judgment reversing the MAB's Decision and Order. The MAB's June 30, 2017 Findings of Fact, Conclusions of Law, Decision, and Order are affirmed.

| | |
|---|---|
| Ted H.S. Hong<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| Kaliko'onalani D. Fernandes<br>and Sianha M. Gualano<br>for respondent State of<br>Hawai'i, Department of<br>Public Safety | /s/ Todd W. Eddins |
| | /s/ Vladimir P. Devens |

